2016-1051, Mr. Lucci. Good morning. The Board erred as a matter of law by failing to identify any credible reason why a person of ordinary skill who did not already have knowledge of the claimed inventions would have consulted the cited publications and then combined them in the proposed manner. In fact, it's clear from the record of this reexamination that the examiner and then the Board found the claimed inventions to be obvious only because they adopted Baldor's factually unsupported allegations regarding combination of the cited references. The Board's finding of obviousness lacks substantial evidence that a person of ordinary skill who did not already know of the claimed inventions would have combined the respective teachings of them, that they would have done so in the proposed manner, and that doing so would have produced a claimed invention. The Board made a lot of factual findings on the issue of motivation to combine. Which factual findings are you actually attacking? Well, I believe actually that there was very little on the issue of motivation to combine. The factual finding that I believe is germane is found in JA 15. The examiner cite, and I'm quoting here, it's the third full paragraph, the examiner cites ABB motor for teaching that direct drive permanent magnet motors are known and can replace traditional indirectly driven gearbox type motors in any application. Well, I mean the Board had a whole section in its opinion entitled reasons to combine, right? The Board that you're on? Are you referring to the right of appeal notice, perhaps? Well, I'm sorry, the Board referred to those reasons to combine and said that they found all of them persuasive, correct? Yes, then they said we would not find sufficient the arguments that were presented below by prime data. Right, so look at A21, there's a little section heading, yes, reasons to combine, which says what they said and what the examiner said, we basically endorse all of that, so you have to look through to what was in there. Correct, and what the examiner said, the reason to combine given by the examiner is found in the right of appeal notice at JA 2133. There's a section there, reason to combine, and it says patent owner argues that the reasons to combine the reference presented in the request are conclusory and unsupported, and they cite to our paper. The examiner disagrees as the request showed that the ABB motor references explicitly state that it's direct drive permanent magnet motors provide efficiencies over gearbox based indirect drive systems and can be used in any application where such indirect motors were used, and they cite Baudour's request for reexamination at 31. So that's the section in the right of appeal notice entitled reason to combine. That was adopted by the board, and the error here by the board was the finding that... So why is that not enough? So there's something in the prior art that talks about efficiencies. Yes, let me try to address that, your honor. The board's premise here was that person of ordinary skill was using one of the motors found in the ABB motor brochure, and in so doing would have produced a claim of invention. But there's no evidence that persons of ordinary skill would have been motivated to combine the references for that reason, or that doing so would have produced a claim of invention. In fact, the evidence is directly the contrary. So let's consider the rejection. In entering the rejections, the board found that both Smith and Hartman disclosed systems in which a motor directly drives a fan. That's their finding. And it does so directly rather than doing so indirectly. Now, as we noted in our briefing, we don't believe that there's adequate evidentiary support for the board's conclusion, but they concluded that. At least from the picture. And what the board relied upon were schematic pictures, diagrams that are very generic, overly generic, and don't provide adequate detail as to structures that are germane to these claims. But actually, an equally significant problem with the board's finding on Smith and Hartman showing direct drive systems is that that finding doesn't align with the motivation finding that I just read to you from the right of appeal notice, which was adopted by the board. And the reason is that the board's finding is the motivation talks about the alleged obviousness of replacing in an indirect system a motor that has a direct drive. Taking an indirect system and putting a direct drive motor in there. They weren't talking about using the actual motor. They were talking about using the teachings. There's an important distinction there. The statement reads, Your Honor, that the motivation to do this is because the direct drive motor provides advantages over indirect drive systems. So the statement there is that one would take, and you find this in the board's decision, specifically at JA-15, they say this. They say the examiner cites ABB motor for the teaching of direct drive permanent magnet motors and can replace traditional indirectly driven gearbox motors. There's a lack of alignment there. On the one hand, they're saying Smith and Hartman disclosed direct drive systems. On the other, they're saying the reason that someone would have modified the prior art is because they would have wanted to use a direct drive motor in an indirect system. Well, there's a mismatch there. Why would someone's insight about what you could do with an indirect system be applicable to references which are alleged by the board to show direct drive systems of driving a fan? So there's a bit of a head scratcher there. And the board appears to have gotten twisted around in its findings and it relied too much on the examiner who relied too much on Baldor's allegations in its request for reexamination. The board's finding is the motivation, for example, cited to the right of appeal notice that I mentioned. The board and the examiner latched on to what Baldor said when in fact a more careful analysis of the merits of Baldor's page, the one that I referenced at J2133, that's the right of appeal notice. That cross-references Baldor's request for reexamination at page 31. And on that cited page in the request, Baldor mentions in a footnote that the ABB motor brochure contends that its disclosed motors can be used in any application in which, for example, squirrel cage motors with a gearbox normally would be used. But that footnote doesn't do anything to reconcile the board's findings on motivation on the one hand and on the other hand what Smith and Hartman teach in terms of being a direct drive system. The ABB motor brochure's statement about its motors can be used in any application is too generic an instance of commercial puffery to be given any weight. In this respect, it's important to remember that the ABB motor brochure is an advertising piece prepared by Baldor's corporate parent, ABB, to increase its sales of motors and variable frequency drives. Can I ask you, within the same RAN, to redirect your focus from page 2133 to a few pages earlier, 2128. This is page 23 of the RAN, which is also one of the pages that the board, in its little reasons to combine paragraph, cites and adopts. And that has the sentence at the bottom, 2128, that says it would have been obvious to replace this old indirect drive induction motor system with a permanent magnet motor direct drive system of claim 12 as shown in the references because one of the references, ABB motor, expressly states that its purpose is to replace induction motors and illuminate gearboxes to improve efficiency and reduce maintenance. Yes, Your Honor. That sentence is consistent with the one I mentioned. It's talking about what would have been obvious to do to an indirectly driven system. Well, this sentence actually covers both, direct-indirect induction magnet. Your Honor, I'm just reading the beginning of that sentence. It says it would have been obvious to replace the old indirect induction motor system with a permanent magnet motor. I don't see anything in there that talks about replacing one type of direct drive motor with another. I'm just reading the sentence, Your Honor. Do you know what's this exhibit? Exhibit 9C, that must be ABB motor. I don't, as I stand here, know what that is, Your Honor. But as I mentioned, with respect to this ABB brochure, which is a sales piece to increase sales of the motors, there's no evidence of record indicating that those of ordinary skill would have regarded ABB's claim as anything other than a self-serving boast that should be regarded with suspicion. It's important on the issue of obviousness to think about the ABB motor brochure in that context. Imagine a person of ordinary skill in the art who didn't already know about the 028 patent. And they had Smith and Hartman in front of them, and they see that neither of those references discusses any problem with the systems that they show. So there's no reason, based on just Smith and Hartman, that a person of ordinary skill would be thinking of modifying them. Now, the allegation here by Balador and by the board is that ABB motor would have changed all that. Really? Is it really credible, without any supporting testimony or other evidence, that a person of ordinary skill would have been so moved by a manufacturer's generic boast that its products can be used in any application that a person of ordinary skill, solely based on that boast, would have modified the systems that Smith and Hoffman had separately touted? It simply is incredible that ABB's boast would have motivated the proposed modification. And for at least that reason, the proposed combination of cited references lacks substantial evidence. I would like to reserve the remainder of my time. Before you sit down, I need to ask you one question. I don't really understand the last section in your brief, or the section in your brief that doesn't call it objective and dis-share secondary considerations. But you seem to be making that argument, and I never saw it below, that you ever made it below. So what is the point of that section? Which section, if you could direct me, Your Honor, specifically, you're reading? You're talking about our opening brief? Yeah. Yes, I'm sorry. The blue brief. It's in your blue brief. Yes. Let me find the page. It's sort of a mysterious section near the end of your blue brief that seems to be arguing objective and dis-share, and yet I never saw that argument presented below. Well, clearly, Your Honor, we would be relying upon whatever evidence is below. And we obviously couldn't expand the record on appeal. Okay. Thank you, Mr. Lucci. Mr. Hunt. Thank you. Good morning. May it please the Court. Let me address the motivation to combine arguments that we've heard this morning. And I want to focus of two, perhaps, primary references on Smith, which is at JA 1776. It's describing, in its title, a variable frequency drive and cooling tower. It's in the context of a cooling tower. And it specifically says on this page for direct connect. And it says, also it says, however, when a gearbox is used. So this reference, Smith teaches, you can have a direct drive system or you can have a gearbox system. It also specifically states that an ACS 800, this is on JA 1777, is well suited for the industrial environment. And that's the drive. The ACS 800 is specifically in the Smith reference. So Smith teaches a cooling tower that you can use either a motor with a direct drive or an indirect drive. And it also specifically says that the ACS 800 variable frequency drive is well suited for this application. Well, it says it's well suited for an industrial application. Why is it that the reference to cooling towers shouldn't be limiting when, for use in a cooling tower, you have to have a particular configuration and you have to have particular capability? Again, by particular configuration, if you're referring to the weight and size arguments, the prime data has made in the past, none of those are part of the claims. There aren't weight and size requirements in the claims themselves. And, in fact, the ABB motor reference, the secondary motor reference, starting at JA 186, even addresses some of those efficiencies on page JA 189 when it says to use this permanent magnet motor. Again, with the ACS 800 drive, one of the specific things says space savings. So it does even motivate if your concern is space and weight. That is absolutely addressed in the ABB motor reference. Do you think there's a general motivation to improve one's products by taking available possibilities that might do that? I'm sorry. I'm not sure I heard that. Do you think there's a general motivation to improve one's products by taking advantage of whatever other alternatives might exist in the prior app? As a general statement, of course. I mean, I think that's true in all systems. In other words, even if the references don't say A should choose B or B should choose A. Of course. There has to be some motivation. Agreed. There has to be some reason that you would look there. And, again, that's contained well within Smith that says, first, you can have either of these two systems, direct drive or indirect. ABB motor specifically says, as I think was mentioned here today, replaces gearbox or indirect systems. So you have a reference in Smith that says you can use either one. And we have a secondary reference, ABB, that says here is the motor that can go in and replace, for example, a gearbox system or can be used if you want a direct drive system. Prime datum suggests that the prior art has to have some problem in the primary reference that's solved in the secondary reference that I don't think is a requirement of the law. There doesn't have to be a problem with the Smith configuration, for example, that the second reference, ABB, solves. There simply has to be a reason to combine the teachings so that you would result in the claimed invention. Smith says you can have a water cooling tower with a motor and gearbox or a direct drive. It doesn't say there's a problem with one or the other. If you choose a direct drive, one of ordinary skill in the art would easily go to ABB motor that says here is a direct drive system. Excuse me. Yes. My timer isn't running. Mine's not either. I just noticed, Your Honor. Shall we put you a 10? That is fine, Your Honor. I mean, this is, you have to conceive, this is a bit of an odd obviousness finding because we rarely see obviousness determination that requires reference to so many prior art references. I mean, this is, so you have to combine a whole bunch of disparate pieces and parts. And so when you talk about motivation to combine that many things, you get further and further away from a typical obviousness analysis. Isn't that true? I certainly can't deny that the multiple references that are here is not typical. Although, again, the parties, and I believe the board, and I don't think it was disputed, effectively have said the ABB motor reference acts as a single reference. They did the same with the ACS. The board treated them as, I think, single references. And that's how it's been addressed on appeal. Even still, I think we have two and three in multiple references. And I would agree that that's not typical. But I don't think that that has been attacked either on appeal or at the board, that that makes it improper. And again, the key references, and the one that's attacked both today and in the briefing by Prime Data, the real issue is, was there a motivation to combine ABB motor with either Smith or Hartman? That is really the issue that's being attacked, not whether some of these other references, would there be a motivation to combine or not. I agree that it's not typical. While it was not really articulated this way, there seems to be a discussion of a long-felt need. It appears both in the enablement analysis and somewhat in this odd section at the end of the blue brief. Do you agree that there was a long-felt need for replacing? I can't, Your Honor. And I certainly don't think that that has been developed well enough in the record to give credit that that would satisfy any long-felt need evidentiary basis. I frankly found the last portion of the brief confusing myself. I think we noted that. But to give that credibility or the Rollins Declaration credibility to substantiate some long-felt need, I think, would be a stretch. And I'll note that most of the crime datum argument is focused on the Rollins Declaration. Mr. Rollins is a named inventor. And what's very peculiar about that declaration, of course, is that although they use it to demonstrate both enablement and also to overcome the obviousness argument, there's no discussion in the declaration about either Smith or Hartman at all. It seems to me that crime datum says in the Rollins Declaration, this is what I, Mr. Rollins, did. This is what I did and the challenges I had, which speaks nothing at all to whether or not a person of ordinary skill in the art would be motivated to combine the teachings of one document, A.B.B. Motor, with another teachings of another document, Smith, or another document, Hartman. That's the issue that's before us. Is there motivation to combine the teachings of those documents? Do you think that the board's findings with respect to motivation to combine are adequate when all they did was refer to your briefing and to some comments by the examiner? Don't you think they should have made their own findings? Well, it would certainly be more complete for us to say exactly which of those findings perhaps, although I think the conclusion – the only conclusion we can reach is they adopted all of them. But if there was something less than that, then they had presented them. Of course, it would have been easier, but I don't think it's improper to say the arguments were made by this party here and we agreed with those positions as a shorthand. Do you know, is that style of board opinion more common in the re-exam context than in the newly prevalent inter-parties review context? I can't say from experience, Your Honor. I don't know. I think I only have a couple minutes left, and I would like to quickly address the enablement argument, if I may. I think the standard under agreement here by the parties is inter-array right, as long as there's a reasonable explanation given by the patent office and the board. And here we have two points. First, of course, we have the Rollins Declaration, who described when he was doing his work combining a motor with a drive, he had, in his exact words, had to go through undue experimentation to find the selection of motor and drive. The patent office then also said… I'm sorry. Is that precisely what he said? I thought he said when I was working with a particular motor, I had to – there was undue experimentation required to figure out how to adjust that motor to make it work, which all by itself wouldn't be enough, but the board went on. The board… And you didn't show that working with others would have required less than undue experimentation. Your recollection of the Rollins may be more precise than I stated, and you're also correct, however, Your Honor, that the board did continue and say, and we've read the 028 specification, and we don't see anywhere where you did describe the selection process for any particular motor or any particular drive. That certainly has to, in combination, satisfy the more than a scintilla, the reasonable explanation burden that the patent office has to shift the burden back to prime datum. I don't think there's any dispute that prime datum hasn't responded to that by trying to overcome and prove that the 028 patent does, in fact, satisfy the enablement requirement. Their entire tact is whether or not the patent office met the reasonable explanation standard in the first place. Combination of the statements of Mr. Rollins and his difficulties and the patent office saying it's not a 028 patent must suffice. Thank you, Mr. Hunt. Thank you. Mr. Lucci, we have a little rebuttal time, a little under three minutes. Thank you, Your Honor. Mr. Hunt mentioned that Smith talks about direct and indirect systems. That very well could be the case. It has that. The problem is that the board didn't rely upon it for its disclosure of indirect. It relied upon it for its disclosure of direct. At the right of appeal notice at page 26, the board stated, the patent owner argues that the error in the rejections that include Smith were unpersuaded, at least for the reasons stated by the examiner and requester. And that goes back to the right of appeal notice at 26. And at the right of appeal notice at 26, there's a reliance there that the examiner says Smith explicitly refers to direct connected fans. So whatever Smith happens to say about indirect systems, that wasn't what the board was relying upon. There was mention of a general motivation to improve things that are in the art. That's true. Begs the question, how and in what way would you improve them? There's no indication here of what direction someone would take. It certainly isn't provided by the ABB motor brochure. If you take a look at the board's decision, they got it sort of backwards. The first reference that they talk about is the ABB motor brochure. They devote four pages to that. That's the secondary reference in the rejection. They were using that as the tail and using that to wag the dog, so to speak. So here there is a fair question of how would you – that you would have wanted to improve things. But the unanswered question is how. And based on the advertising puffery that's there in the ABB motor brochure and its general statement, it could be used in any application. That is, in the context of substantial evidence, the mere scintilla that is insufficient. That's all. KA-189 says the ABB system offers several valuable benefits. It lists about five of them. It offers several what, Your Honor? Valuable benefits. So it still leaves open the question of how, if at all, someone reading Smith and Hartman would have modified those publications. If just someone saying that their motor is all for benefits is fair game to invite combination with any reference, then I think that would gut the law of obviousness. We also, in this context, there was unrebutted testimony of Mr. Rollins regarding the people wouldn't have been motivated. I understand the comment that there's a statement in there on enablement. I think Your Honor made the point that I would make that the single aspect in which he had a problem, one type of motor from one manufacturer, was not adequate to support a lack of enablement rejection. Mr. Hunt referred to citations to the specification. There was no fact finding, though, about the level of skill in the art, the scope of the claims, the typical wands factors types of things that people would look at. So I see that my time is up. For the reasons stated, we believe that the board's decision should be reversed. Thank you, Mr. Lucci. We'll take the case under review.